EX PARTE W. W. STERLING, ADJUTANT GENERAL OF TEXAS, ET AL.

No. 6322.   Decided October 1, 1932.
(53 S. W., 2d Series, 294.)

*James V. Allred*, Attorney General, *T. S. Christopher, Neal Powers* and *Elbert Hooper*, Assistants Attorney General, for relators.

It is an elemental, and almost universal, rule that a court of equity is without jurisdiction to issue an injunction to restrain criminal proceedings unless it be for the purpose of protecting some property right. It has no jurisdiction, whatever, over the apprehension, prosecution or punishment of crimes or misdemeanors and cannot control such proceedings. This doctrine has been uniformly upheld in Texas as well as in all American jurisdictions. Ex parte Castro, 115 Texas, 77, 273 S. W., 795; Winn v. Dyess, 167 S. W., 294; City of San Marcos v. I. & G. N. Ry. Co., 167 S. W., 294; Box v. Newsom, 43 S. W. (2d) 981, and numerous authorities therein cited. High on Injunctions, Fourth Edition, Sections 68 and 1425.

If the use made of the highways is not a property right, then equity cannot protect it by injunction for, in doing so, it must assume control and jurisdiction of criminal proceedings, which it cannot do. An injunction so issued is void and contempt proceedings based thereon are void. Ex parte Degener, 30 Texas Crim. Rep., 566, 17 S. W., 1111; In re Sawyer, 124 U. S., 200; High on Injunctions, 4th Edition, Section 1425.

We submit that the use which is made of the highways by the parties to the proceedings in Upton and Navarro Counties is a special and an extraordinary use and as such is enjoyed merely as a privilege and must be accepted under such conditions as may be imposed by the Legislature of this State in the due and proper exercise of its police power. They have no property rights in such use and are, therefore, not entitled to protect such use in the equity courts of this State. Robbins v. Limestone County, 114 Texas, 345, 268 S. W., 915; City of Waco v. O'Neal, 33 S. W. (2d) 205; Buck v. Kuykendall, 267 U. S., 307, 69 L. Ed., 626, 45 S. Ct., 324; Southern Motor Ways v. Perry, 39 Fed. (2d) 145; Barnes v. Essex County, 86 N. J. L., 141, 91 Atl., 1019; Commonwealth v. Kingsbury, 199 Mass., 542, 85 N. E., 848; Illinois Malleable Iron Company v. Commissioners of Lincoln Park, 263 Ill., 446, 105 N. E., 336. Tiedman Municipal Corporations, Sec. 299; McQuillin Municipal Corporations, 1620.

The use of the public highways to transport unusual loads

or for the purpose of gain is an extraordinary use and as such is not enjoyed as a right but as a mere privilege or license revocable at the will of the Legislature. Newson v. City of Galveston, 76 Texas, 559, 13 S. W., 368; Greene v. City of San Antonio, 178 S. W., 6; Ex parte Sepulveda, 108 Texas Crim. Rep., 533, 2 S. W. (2d) 445.

*Swartzberg & Rawlings,* of Fort Worth, *W. H. Lipscomb* and *C. H. Tupper, Jr.,* both of San Angelo, and *J. S. Callicutt,* of Corsicana, for respondents.

MR. JUDGE LEDDY of the Commission of Appeals delivered the opinion for the court.

This is an original habeas corpus proceeding. We adopt the following from the brief filed by the Attorney General in behalf of relators as a correct statement of the facts involved:

"On August 31, 1932, J. H. McCulloch and J. L. McCulloch, and others, all residents of Navarro County, Texas, presented a bill in equity to the Honorable H. F. Kirby, Judge of the 77th Judicial District, who was sitting temporarily in the 13th Judicial District of Navarro County. Petitioners were complaining of Rufus Pevehouse as Sheriff of Navarro County, L. G. Phares as Chief of the Highway Patrol, Cleo G. Miller as county attorney of Navarro County, W. W. Sterling as Adjutant General of Texas, and of all sheriffs, deputy sheriffs and constables in the State of Texas without naming them, and of all county attorneys, all highway patrolmen, all State rangers, all county highway officers, and of all weight and license inspectors in the State without naming any of them.

"In brief, the bill alleged that petitioners were then engaged, and expected to continue to engage, in the business of hauling cotton over the public highways from points in Navarro County to the ports of Houston, in Harris County, and Galveston, in Galveston County; that they had invested considerable sums of money in their trucks which they expected to use in the business of transporting over the highways; that if they were limited to a net load of 7,000 pounds they could not earn enough profit to justify operations and their trucks would be of little value, but that if they were permitted to haul a maximum net load of 11,000 pounds, or twenty bales of cotton, they could each of them earn a reasonable profit or wage.

"As further grounds for the relief sought the bill alleges that other persons have secured injunctions allowing them to haul loads exceeding 7,000 pounds; that the act is discriminatory because the load limit does not apply to motor busses;

that it is discriminatory because of the 14,000 pound exception in favor of short hauls between points of origin and common carrier stations, and that the act in limiting the load to 7,000 pounds is unreasonable and deprives them of their property without due process of law.

"The petitioners prayed for temporary injunction restraining the officers named, and all other members of their class, from interfering with their truck operations over the highways when their load did not exceed 11,000 pounds and, further, to restrain said officers from filing complaints against, arresting or prosecuting them in any manner for any violation of the 7,000 pound load limit.

"Without notice or hearing the judge of said court granted the injunction as prayed for.

"Therefore, on the 11th day of September, 1932, certain of the petitioners in said cause, by their attorney, filed a motion to rule the relators in contempt of court for violating said restraining order in arresting and filing complaints against the drivers of their trucks for transporting a load in excess of 7,000 pounds over the highways of Harris County. Thereupon the Honorable H. F. Kirby ordered that the relators be taken in custody by the sheriffs of the several counties of their residence, and that they be delivered at the court house in Corsicana, Texas, at 10 A. M. on September 16, 1932. to show cause why they should not be punished and imprisoned.

"All of the relators, except Ross Dickey, were detained and arrested on September 14, 1932, in obedience to said order. Relator Ross Dickey was arrested by the Sheriff of Navarro County on September 12th, and was released upon bond conditioned for his appearance before said court on Friday, September 16, 1932.

"The relators, on September 14, 1932, applied to the Chief Justice of the Supreme Court for writs of habeas corpus, and they were granted in behalf of all except Ross Dickey."

■ It is the general rule that courts of equity deal only with vested property rights; hence they will not by injunction stay prosecution of criminal proceedings. High on Injunction, 3rd Ed., Vol. 1, Sec. 68; Chisholm v. Adams, 71 Texas, 678, 10 S. W., 336; City of Galveston v. Mistrot, 104 S. W., 417.

There is a well recognized exception to this rule to the effect that where the statute under which the complainant is being prosecuted is unconstitutional, or for any other reason void, and the prosecution involves a direct invasion of property rights which will result in an irreparable injury thereto, an in-

junction may be granted to restrain the commencement or continuance of criminal proceedings based on such statute. C. J., Vol. 32, Sec. 447.

■ "Equitable jurisdiction exists," says the Supreme Court of the United States in Packard v. Banton, 264 U. S., 140, 68 L. Ed., 596, "to restrain criminal proceedings under unconstitutionol enactments when the prevention of such proceedings is essential to the safeguarding of rights of property."

The reason for the limitation upon the power of courts of equity to restrain officers from enforcing criminal statutes is well stated by the Circuit Court of Appeals in Arbuckle v. Blackburn, 113 Fed., 616, 51 C. C. A., 122, 65 L. R. A., 864, in the following excerpt from the opinion:

"To hold otherwise would be to subvert the administration of the criminal laws and deny the right of a trial by jury by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to prosecute parties if found guilty."

Courts of equity are not concerned with the enforcement of criminal laws. Courts of law are created for this purpose. Courts of equity are concerned only with the protection of civil property rights. Therefore, when a court of equity issues an injunction which operates to stay the hand of law enforcing officers, its primary purpose is not to enjoin the criminal proceeding. That is merely incidental to the main ground upon which equity jurisdiction protects vested property rights from threatened and irreparable injury. Such jurisdiction is exercised solely with reference to the effect of the enforcement of a void law upon vested property rights. Winn v. Dyess, 167 S. W., 294; Ex parte Castro, 115 Texas, 77, 273 S. W., 795; State v. Clark, 79 Texas Crim. Rep., 559, 187 S. W., 760; Jones v. Whitehead, 278 S. W., 305; City of Breckenridge v. McMullin, 258 S. W., 1099.

■ Under the well established rules of equity jurisprudence it is clear that the district judge was without authority to issue the writ of injunction to prevent the enforcement of the law regulating the operation of motor trucks upon the highways of this State unless the petition for such injunction clearly showed the existence of two facts, viz: First, that such law is unconstitutional and void; second, that its enforcement constitutes a direct invasion of a vested property right of the complainants. Davis et al. v. City of Los Angeles, 189 U. S., 207,

23 Sup. Ct. Rep., 499; In re Sawyer, 124 U. S., 200; Box v. Newsom, 43 S. W. (2d) 981.

We are of the opinion that the allegations of the petition in the case in which the injunction was issued do not show the existence of either of said facts. It is true that complainant's petition challenges the validity of the motor truck law for various reasons. All of these grounds, however, were urged in the case of Sproles v. Binford, which originated in the United States District Court for the Southern District of Texas. It finally reached the Supreme Court of the United States. The validity of the act against the assaults there made was fully upheld in an exhaustive opinion delivered by Chief Justice Hughes, on May 23, 1932. 286 U. S., 374, 52 S. Ct., 581, 76 L. Ed., 1167. It was determined that the act was not subject to any of the objections made against its constitutionality and that its enactment was a valid exercise of the legislative power of this State to regulate the operation of motor vehicles using the highway for profit. That opinion so fully and completely answers every ground upon which the constitutionality of the law is here assailed that we need do no more than to say that the conclusions reached by that tribunal, which are so ably and forcibly expressed by its eminent Chief Justice, meet with our hearty approval.

■ We are further of the opinion that the petition upon which the injunction was issued shows upon its face that no vested property right of the complainants would be affected by the enforcement of this act. The complainants in the proceeding in which the injunctions were issued are not making, in common with the general public, the ordinary use of the highways, but an extraordinary one for the purpose of carrying on a business for profit. That they have no vested right to so use such highways is beyond question. Public highways and streets are constructed and maintained at the public expense. No person, therefore, can insist that he has, or may acquire, a vested right to use such streets and highways in carrying on a commercial business. Pond on Public Utilities, 3d Ed., Chap. 28, Secs. 753 and 755; Ex parte Parr, 82 Texas Crim. Rep., 525, 200 S. W., 404; Gill v. City of Dallas, 209 S. W., 209; Ex parte Sepulveda, 108 Texas Crim. Rep., 533, 2 S. W. (2d) 445; Kissinger et al. v. Hay et al., 52 Texas Civ. App., 295, 113 S. W., 1005; City of Graham v. Seal et al., 235 S. W., 668.

■ The law making body of this State may, if it considers it in the public interest, withhold altogether the use of public high-

ways from the operation of trucks carrying freight for hire. The power to prohibit the use of the highways for such purposes necesarily includes the lesser power to place such restrictions and regulations upon the use thereof as may be deemed proper, even though the burdens imposed may be of such a nature as to prevent any profitable operation upon the part of those desiring to pursue such business. Of course, where the Legislature grants the right to the use of the highways for the carrying of freight it cannot unreasonably and unfairly discriminate in favor of or against any particular person or class of persons. Smith v. Cahoon, 283 U. S., 553; Sproles v. Binford, U. S. Sup. Ct., supra. In our opinion, the act in question is, as was held by the Supreme Court of the United States in the Sproles case, free from any such discriminatory provisions.

In the case of Le Blanc v. City of New Orleans, 138 La., 243, 70 So., 212, it was held that an injunction issued to restrain the officers of the City of New Orleans from enforcing a jitney ordinance, was void. It was there decided that no vested right existed in the complainant to use the city streets in the operation of automobiles carrying passengers for hire; that such right could only be claimed under a grant by the city and therefore could only be exercised in accordance with the terms of the grant. An individual seeking and not possessing a right of that kind might accept the grant with the conditions imposed by the offer, in which case he is bound by the conditions; or he might refuse to accept the conditions, in which case there is no grant, and without the grant so offered, or some other from the authorities competent to make it, he can never acquire the right to make use of a street as his place of business.

The court, in denying that those using public highways for profit had or could have any vested right to so use the same said:

"* * * and, as the existence and exercise of the right here asserted by plaintiffs would be irreconcilable with the existence and exercise of the power so delegated, we are of opinion that the right does not exist, and that plaintiffs allege no such invasion of a property right and disclose no such interest in the operation of the ordinance herein question as to give them a standing in court for the purposes of this suit. Hence it is immaterial for those purposes whether the law, as administered in the courts vested with jurisdiction (original and appellate) with respect to prosecutions under the ordinance in question, provides an adequate remedy for the protection of such interest, or whether the ordinance be valid or invalid; and hence, also,

the civil district court was without jurisdiction to grant the injunction."

A similar ruling was made in Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W., 668, which involved an attempt to restrain the enforcement of an ordinance prohibiting the sale of country produce upon the streets of the City of San Antonio. The right to injunctive relief was denied upon the ground that the appelees had no vested right to make marts of the streets and that to deny them the privilege of so doing was not to destroy or invade any of their property rights.

To the same effect is the case of Greene v. City of San Antonio, 178 S. W., 6, which was a proceeding to restrain the enforcement of a jitney ordinance. The court denied the right to an injunction and Judge Fly, who rendered the opinion for the court, in his usual terse and vigorous style, made this observation:

"No man has a right to use a street for the prosecution of his private business and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good. * * *

"In the case of the Fifth Avenue Coach Co. v. City of New York, 194 N. Y., 19, 86 N. E., 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas., 695, it was held that the right to run coaches on Fifth Avenue was a franchise, and, further, that the city had the authoirty to grant or withhold the right to run coaches on the street."

In the course of the opinion he further stated:

"So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given."

■ It may safely be said that it is settled by the great weight of authority in this, as well as in other jurisdictions, that the use of public highways by common carriers of property for hire is an extraordinary use enjoyed as a mere privilege or license, revocable at the will of the Legislature. Robbins v.

Limestone County, 114 Texas, 345, 268 S. W., 915; Port Arthur v. Young, 264 S. W., 924; City of Waco v. O'Neal, 33 S. W. (2d) 205; Box v. Newsom, 43 S. W. (2d) 981; Buck v. Kuykendall, 267 U. S., 307, 69 L. Ed., 626, 45 S. Ct., 324; Packard v. Banton, 264 U. S., 140; Southern Motor Ways v. Perry, 39 Fed. (2d) 145; Ex parte Parr, 82 Texas Crim. Rep., 525, 200 S. W., 404; Gill et al. v. City of Dallas et al., 209 S. W., 209; Newson v. City of Galveston, 76 Texas, 559, 13 S. W., 368; Ex parte Sepulveda, 108 Texas Crim. Rep., 533, 2 S. W. (2d) 445; Greene v. City of San Antonio, 178 S. W., 6.

The petition upon which the injunction was issued failed to show that the law in question is invalid and that its enforcement would constitute an invasion of any property right possessed by the complainants. Therefore, they were not entitled to protection at the hands of a court of equity. Since this is true, it follows that the injunction restraining relators from enforcing the act in question is void and all proceedings had thereunder must fall. Relators are entitled to be discharged. It is so ordered.

The foregoing opinion is adopted as the opinion of the Supreme Court, and relators ordered discharged.

C. M. CURETON, Chief Justice.