

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

June 17, 1948

Hon. C. H. Cavness
State Auditor
Austin, Texas

    Attn: Hon. Chas. C. Cellum

Opinion No. V-606

Re: Whether or not Certi-
ficates of Deposit is-
sued by State banks
are "written evidences
of indebtedness" as
that term is used in
Article 7084, V.C.S.,
as amended.

Dear Sir:

    Your recent request for an opinion on the a-bove question reads in part as follows:

> "We submit herewith certified copies of Certificates of Deposit which are to show the form of certificates issued by The Guaranty State Bank of New Braunfels, Texas, to certain classes of depositors. These certificates may be, and many are, renewed by the bank issuing new certificates when the old certificates be-come due thus many of such certificates bear maturity dates of less than one year from date of issue but represent indebtedness which has remained outstanding for one year or more from date of inception which has been renewed or extended . . .

> "It is requested that you advise this of-fice whether, in your opinion, the certifi-cates referred to, specimens of which are en-closed, represent written evidences of indebt-

edness of the bank on which franchise tax should be computed in the event they have been outstanding one year or more from date of inception."

The Certificates of Deposit or Time Deposit Certificates attached to your letter of request read substantially as follows:

This is to certify that_____ has deposited with this bank $_____ payable to the order of _____, _____ months after date in current funds on the return of this certificate properly endorsed with interest at _____ per cent per annum from date until _____, 19___. No interest after maturity.

                                    _____
                                      Cashier

That portion of Article 7084, V.C.S., as amended, pertinent to this opinion reads as follows:

" . . . shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, (outstanding bonds, notes and debentures shall include all written evidences of indebtedness which bear a maturity date of one (1) year or more from date of issue, and all such instruments which bear a maturity date of less than one (1) year from date of issue but which represent indebtedness which has remained outstanding for a period of one (1) year or more from date of inception, but which have been renewed or extended, or refinanced by the issuance of other evidences of the indebtedness . . . "

It is settled that our present franchise tax

is a charge made by the State against a corporation for doing business in this State. Houston Oil Co. v. Lawson, 175 S. W. (2d) 716, error refused.

Our first franchise tax was enacted by the Legislature in 1893 and provided for a flat tax of $10.00 per year upon private corporations. Acts 1893, 23rd Leg., 158, ch. 102, sec. 5. In 1897 the statute was amended so as to base the franchise tax upon the authorized capital stock of corporations. Acts 1897, 25th Leg., p. 141, ch. 104. In 1907 our Legislature enacted a franchise tax statute which based the tax upon either a corporation's authorized capital stock or its outstanding capital stock plus its surplus and undivided profits, depending upon which was the greater. Acts 1907, 1st Called Session, p. 503, ch. 23. In 1930 the Legislature amended the statute and based the franchise tax on a corporation's outstanding capital stock, surplus and undivided profits plus the amount of outstanding bonds, notes and debentures other than those maturing in less than a year from date of issue. Acts 1930, Fifth Called Session, 41st Leg., p. 220, ch. 68. In 1941 the statute was amended so as to add outstanding bonds, notes and debentures which bear a maturity date of less than one year from date of issue, but which represent indebtedness which has remained outstanding for a period of one year or more from date of inception which have been renewed or extended or refinanced by the issuance of other evidences of indebtedness. Acts 1941, 47th Leg., p. 269, ch. 184, art. 8, sec. 1.

In the opinion of this office the above history of our franchise tax statute shows that the Legislature intended that the franchise tax was to be based upon the invested and borrowed capital of a corporation. In Houston Oil Company v. Lawson, 175 S. W. (2d) 716, error refused, the Court, in discussing the 1941 amendment to Article 7084, V.C.S., stated:

" . . . The amendment provided, in effect, that the basis for computing the tax should be the invested and borrowed capital of the corporation . . . The amendment broadened the scope of the invested and borrowed capital provision of the Statute by including

for the first time borrowed capital represent-
ed by renewals of indebtedness not payable
within one year . . . "

The answer to the question submitted depends,
therefore, upon whether or not the Certificates of De-
posit submitted represent borrowed capital of State
banks.

A Certificate of Deposit is defined as:

"A written acknowledgement by a bank or
banker of the receipt of a sum of money on
deposit which the bank or banker promises to
pay to the depositor, to bearer, to the order
of the depositor, or to some other person or
to his order." 9 C.J.S. 636, § 310.

In Texas & P. Ry. Co. v. Potterff, 63 F. (2d)
1, C.C.A. Texas, affirmed 291 U. S. 245, the Court stat-
ed:

"We agree with this view that a deposit
does indeed create a debt, but it creates
something more. That a deposit is one thing,
a loan another. 'The striking fact remains
. . . that a real difference between a de-
posit and a loan has always been assumed, as
a matter of custom, in the banking business
itself, and in all legislation dealing with
the subject.'"

This holding was based upon Divide County v.
Baird, 212 N. W. 236, wherein it was stated:

"We are warranted in taking judicial
notice of the fact that, in the banking busi-
ness, it has been and still is customary to
treat loans and deposits as distinct and es-
sentially dissimilar transactions."

In Shaw v. McBride, 9 S. W. (2d) 410, affirmed
27 S. W. (2d) 121, it was held that Certificates of De-
posit, such as those in question here, evidence a depos-
it and not a commercial loan. Said the Court:

"It is said by some courts that a certificate of deposit in the usual form is, in substance, a promissory note. Undoubtedly such certificates do possess an important feature of promissory notes. Like promissory notes, they are written promises to pay money. But in every general deposit of money with a bank such a promise is either expressed or implied. Reducing the promise to writing in the form of a certificate does not alter the nature of the transactions or transform what the parties intended as a deposit into a commercial loan . . . "

It has been the uniform departmental construction of the Secretary of State, the officer charged with the duty of administering the franchise tax statute, that Certificates of Deposit are not "written evidences of indebtedness" within the meaning of Article 7084. The Legislature has met several times since the statute was so construed by the Secretary of State, but it has not undertaken to change the statute so as to alter the construction which has been given it. We feel as the Supreme Court of Texas in Isbell v. Gulf Union Oil Co., 209 S. W. (2d) 762, wherein it held:

"If the Legislature did not approve the construction which had been given the statute it could have easily amended the law. This was not done. This court does not feel justified to hold now that the Secretary of State was in error in the construction of this statute."

Certificates of Deposit being in fact written evidence of time deposits only and not written evidences of borrowed capital, it is our opinion that certificates of deposit are not "written evidences of indebtedness" as that term is used in Article 7084, V.C.S., as amended.

## SUMMARY

The submitted Certificates of Deposit issued by State banks are not "written evidences of indebtedness" as that term is used

Hon. C. H. Cavness, Page 6 (V-606)

in Article 7084, V.C.S., as amended.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By ~~Durward M. Goolsby~~
Durward M. Goolsby
Assistant

DMG:sh

CONSIDERED AND APPROVED BY
CONFERENCE COMMITTEE

Price Daniel
ATTORNEY GENERAL